UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
RICHARD ROSENBERG and PAUL D'ASCOLI,      Civ. Action No.:
individually and on behalf of all others similarly situated,

                     Plaintiffs,

    -against-

QUIK FUND, INC., HARRIS SCOTT FOCER, and
GARY HORN,

                   Defendants.
--------------------------------------------------------------------X

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs, RICHARD ROSENBERG and PAUL D'ASCOLI ("Plaintiffs"), individually and on behalf of all others similarly situated, as and for their Class and Collective Action Complaint against Defendants, QUIK FUND, INC., HARRIS SCOTT FOCER, and GARY HORN ("Defendants"), respectfully allege as follows:

## JURISDICTION AND VENUE

1.    Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, Articles 6 and 19 of the New York Labor Law ("NYLL"), and Title 12 of the New York Codes, Rules, and Regulations, Part 142 ("NYCRR"), to recover lost wages and other relief related to their employment with Defendants. This action is brought as a collective action pursuant to 29 U.S.C. §216(b) and as a state-law class action under Fed. R. Civ. P. 23(b)(3).

2.    Jurisdiction over Plaintiffs' FLSA claims is based upon Section 216(b) of the FLSA, 29 U.S.C. § 216(b), and upon 28 U.S.C. § 1331.

3.      The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a) because these claims are so related to the FLSA claims that they form part of the same case or controversy.

4.      Venue in this district is appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## PARTIES

5.      Plaintiff, Richard Rosenberg ("Rosenberg"), is an adult male currently residing in the State of New York.

6.      Plaintiff, Paul D'Ascoli ("D'Ascoli"), is an adult male currently residing in the State of New York.

7.      Plaintiffs and other similarly situated employees were jointly employed by Defendants as mortgage loan originators.

8.      Defendant, Quik Fund, Inc. ("Quik Fund") is a mortgage lender licensed to originate loans in the State of New York and elsewhere.

9.      According to the New York State Department of State, Division of Corporations, Defendant Quik Fund is a foreign business corporation duly authorized to conduct business in the State of New York.

10.     According to the New York State Department of State, Division of Corporations, Defendant Quik Fund maintains a principal executive office located at 900 Stewart Avenue, Suite 240, Garden City, New York 11530.

11.     Upon information and belief, at all relevant times, Defendant Quik Fund maintained control, oversight, and direction over Plaintiffs, including timekeeping, payroll, and other employment practices applied to them.

2

12.     Upon information and belief, Defendant, Harris Scott Focer ("Focer"), is a resident of the State of New York.

13.     According to the New York State Department of State, Division of Corporations, Defendant Focer is the Chief Executive Officer of Defendant Quik Fund.

14.     Upon information and belief, at all relevant times, Defendant Focer was and continues to be an owner, corporate officer, director, and/or managing agent of Defendant Quik Fund.

15.     Upon information and belief, at all relevant times, Defendant Focer exercised operational control over Defendant Quik Fund, controlled significant business functions of Defendant Quik Fund, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of Defendant Quik Fund in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiffs.

16.     Upon information and belief, at all relevant times, Defendant Focer participated in running the daily operations of Defendant Quik Fund.

17.     Upon information and belief, at all relevant times, Defendant Focer participated in the management and supervision of Plaintiffs and their work for Defendant Quik Fund.

18.     Upon information and belief, Defendant, Gary Horn ("Horn"), is a resident of the State of New York.

19.     Upon information and belief, at all relevant times, Defendant Horn was and continues to be an owner, corporate officer, director, and/or managing agent of Defendant Quik Fund.

20.     Upon information and belief, at all relevant times, Defendant Horn exercised operational control over Defendant Quik Fund, controlled significant business functions of

3

Defendant Quik Fund, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of Defendant Quik Fund in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiffs.

21.     Upon information and belief, at all relevant times, Defendant Horn participated in running the daily operations of Defendant Quik Fund.

22.     Upon information and belief, at all relevant times, Defendant Horn participated in the management and supervision of Plaintiffs and their work for Defendant Quik Fund.

23.     As such, Defendants Quik Fund, Focer, and Horn are covered employers within the meaning of the FLSA and the NYLL, and, at all relevant times, jointly employed Plaintiffs and other similarly situated employees.

## FACTS RELATED TO NAMED PLAINTIFFS

24.     Plaintiffs were employed as residential mortgage loan originators for the benefit of and at the direction of Defendants from on or about November 2, 2018 until on or about April 22, 2019.

25.     During their employment, Plaintiffs primary duty was to originate residential mortgage loans for Defendants. This duty primarily entailed soliciting potential borrowers to obtain a residential mortgage, completing loan applications, and collecting information from the potential borrowers.

26.     Throughout their employment, Plaintiffs performed their primary duties for Defendants at their Garden City Branch.

27.     Throughout their employment, Defendants did not require Plaintiffs to sign in or out of their daily shifts, and they did not track their hours worked in any other manner.

28.     Upon information and belief, Defendants did not keep and maintain accurate records reflecting the actual time that Plaintiffs worked each day and each week.

29.     Throughout their employment, Plaintiffs typically worked five (5) days per week, Monday through Friday, from about 9:00 a.m. until about 6:00 p.m.

30.     Throughout their employment, Plaintiffs did not receive and did not take uninterrupted meal breaks.

31.     Throughout their employment, Plaintiffs generally worked about forty-five (45) hours per week.

32.     Plaintiffs' compensation structure was governed by written commission agreements.

33.     Pursuant to the written commission agreements, Plaintiffs were paid on a commission only basis. They did not receive a salary, hourly rate, daily rate, or any other rate of pay.

34.     Throughout their employment, if Plaintiffs did not originate a loan that later closed and funded, they were not paid any wages at all for their work.

35.     During their employment, Plaintiffs were only paid commission for one week. During each of the remaining weeks of their employment, Plaintiffs were not paid any wages at all.

36.     Throughout their employment, Defendants did not pay Plaintiffs one-and-one-half times their regular rate of pay for any hours that they worked in excess of forty (40) each week.

37.     Throughout their employment, Defendants did not pay Plaintiffs overtime compensation for any hours that they worked in excess of forty (40) each week.

38.     Throughout their employment, Defendants did not pay Plaintiffs overtime compensation reflective of the commissions they earned.

39.     Throughout their employment, Defendants did not pay Plaintiffs minimum wages during those weeks in which they did not earn commissions.

40.     During their employment, Defendants failed to provide Plaintiffs with a notice and acknowledgement of pay rate and payday, or any other type of wage notice, at the time of their hiring or at any time thereafter, as required by NYLL § 195(1).

41.     During their employment, Defendants failed to provide Plaintiffs with complete and accurate earnings statements, paystubs, or any other type of complete and accurate wage statement along with their weekly earnings, as required by NYLL § 195(3).

42.     Defendants Focer and Horn participated in the decision to hire Plaintiffs.

43.     Defendants Focer and Horn participated in deciding the job duties that Plaintiffs performed on a daily basis.

44.     Defendants Focer and Horn participated in the daily supervision of Plaintiffs' job duties and responsibilities.

45.     Defendants Focer and Horn participated in setting Plaintiffs' work schedule.

46.     Defendants Focer and Horn participated in deciding the hours that Plaintiffs worked each week.

47.     Defendants Focer and Horn participated in deciding the manner in which each Plaintiff was paid.

48.     Defendants Focer and Horn participated in deciding the compensation each Plaintiff was paid.

49.     Defendants Focer and Horn participated in running the day-to-day operations of Defendant Quik Fund during Plaintiffs' employment.

50.     Defendants managed Plaintiffs' employment, including the amount of time worked and the rates that they were paid.

51.     Defendants dictated, controlled, and ratified the wage and hour and all related employee compensation policies.

52.     Defendants were aware of Plaintiffs' work hours and rates of pay but failed to pay them the proper wages to which they were entitled under the law.

53.     Defendants' failure to pay proper wages in a timely manner has been made without good faith, willfully, and with a reckless disregard for Plaintiffs' rights, and Plaintiffs have been damaged by such failures.

## FACTS RELATED TO SIMILARLY SITUATED EMPLOYEES

54.     Defendants have jointly employed, and continue to employ, similarly situated mortgage loan originators to perform the same duties and responsibilities as Named Plaintiffs herein.

55.     Upon information and belief, Defendants pay their mortgage loan originators on either a commission-only basis, offer them a small weekly draw against commissions, or pay them a small weekly salary in addition to commissions.

56.     Upon information and belief, when the commission-only mortgage loan originators do not earn a commission in a given week, they are not paid any wages at all for the work that they provide for Defendants.

57.     Upon information and belief, the similarly situated mortgage loan originators regularly work in excess of forty (40) hours per week.

58.     Upon information and belief, Defendants do not pay the similarly situated mortgage loan originators overtime compensation for those hours that they work in excess of forty (40) each week.

59.     Upon information and belief, Defendants do not pay the similarly situated mortgage loan originators overtime compensation at a rate of one and one-half times their regular rate of pay.

60.     Upon information and belief, Defendants do not pay the similarly situated mortgage loan originators overtime compensation reflective of the commissions they earned.

61.     Upon information and belief, Defendants do not pay the similarly situated mortgage loan originators the statutory minimum wage rate for all hours worked.

62.     Upon information and belief, Defendants do not provide the similarly situated mortgage loan originators with a notice and acknowledgement of pay rate and payday, or any other form of wage notice, at the time of their hiring, or at any other time thereafter, as required by NYLL § 195(1).

63.     Upon information and belief, Defendants do not provide the similarly situated mortgage loan originators with complete and accurate earnings statements, paystubs, cash receipts, or any other type of complete and accurate wage statement along with their weekly earnings, as required by NYLL § 195(3).

64.     Upon information and belief, Defendants Focer and Horn participate in the decision to hire and fire similarly situated mortgage loan originators.

65.     Upon information and belief, Defendants Focer and Horn participate in the supervision of similarly situated mortgage loan originators' duties each day.

66.    Upon information and belief, Defendants Focer and Horn participate in deciding the job duties that similarly situated mortgage loan originators perform each day.

67.    Upon information and belief, Defendants Focer and Horn participate in setting the similarly situated mortgage loan originators' work schedule each week.

68.    Upon information and belief, Defendants Focer and Horn participate in deciding the hours that similarly situated mortgage loan originators work each day and week.

69.    Upon information and belief, Defendants Focer and Horn participate in deciding the manner in which similarly situated mortgage loan originators are paid each week.

70.    Defendants manage the similarly situated mortgage loan originators' employment, including the number of hours worked and the wages paid.

71.    Defendants are aware of the similarly situated mortgage loan originators' work hours and rates of pay but fail to pay them the proper wages to which they are entitled under the law.

72.    Defendants' failure to pay proper wages in a timely manner has been made without good faith, willfully, and with a reckless disregard for the similarly situated laborers' rights, and they have been damaged by such failures.

## COLLECTIVE ACTION ALLEGATIONS

73.    As this Complaint pertains to Counts I and II herein, Plaintiffs, individually and on behalf of all similarly situated current and former mortgage loan originators employed by Defendants, bring this action as a collective action under the FLSA to recover, *inter alia*, unpaid overtime compensation, minimum wages, and liquidated damages owed to Plaintiffs and all other similarly situated mortgage loan originators.

74.     Defendants' failure to pay Plaintiffs and all other similarly situated mortgage loan originators overtime compensation and minimum wages has violated the FLSA.

75.     By the conduct alleged herein, Defendants have engaged in a systematic and unlawful scheme to deprive their employees of the wages to which they are statutorily entitled.

76.     As a result of these unlawful practices, Plaintiffs and the similarly situated mortgage loan originators have suffered a loss of wages.

77.     Plaintiffs seek to proceed as a collective action pursuant to 29 U.S.C. §216(b) on behalf of themselves and the following class of persons:

> All mortgage loan originators who have worked for Defendants at any time from three (3) years prior to the filing of this action to the entry of judgment in this action who give their consent, in writing, to become Opt-In Plaintiffs (hereinafter, the "FLSA Class").

78.     Plaintiffs and other members of the FLSA Class are similarly situated inasmuch as, *inter alia*, they were required to work in excess of forty (40) hours a week without being paid proper overtime compensation, and were required to work numerous hours throughout their employment without being paid the statutory minimum wage rate for all hours.

79.     Defendants have known that Plaintiffs and similarly situated mortgage loan originators have performed work that has required overtime compensation and minimum wages. Nonetheless, Defendants have operated under a scheme to deprive Plaintiffs and the other members of the FLSA Class of overtime compensation and minimum wages by failing to properly compensate them for all time worked.

80.     Defendants' conduct, as alleged herein, has been willful and has caused significant damage to Plaintiffs and the similarly situated mortgage loan originators.

## CLASS ACTION ALLEGATIONS

81.     As this Complaint pertains to Counts III through VI herein, Plaintiffs, individually and on behalf of all similarly situated current and former mortgage loan originators employed by Defendants, also seek to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), under the NYLL to recover, *inter alia*, unpaid overtime compensation, unpaid minimum wages, statutory damages for Defendants' wage notice and wage statement violations, liquidated damages, and CPLR interest owed to Plaintiffs and all other similarly situated mortgage loan originators.

82.     Fed. R. Civ. P. 23(b)(3) provides that a cause of action may be maintained as a class action if the following elements are met:

(a)     The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

(b)     There are questions of law or fact common to the class which predominate over law and questions affecting only individual members;

(c)     The claims or defenses of the representative parties are typical of the claims or defenses of the class;

(d)     The representative parties will fairly and adequately protect the interests of the class; and

(e)     A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### Class Definitions

83.     Plaintiffs seek certification of a class consisting of the following individuals:

> All mortgage loan originators who have worked for Defendants at any time from six (6) years prior to the filing of this action to the entry of judgment in this action (hereinafter, the "New York Class").

**Numerosity**

84.  Plaintiffs satisfy the numerosity requirements as the proposed class is so numerous that joinder of all members is impracticable.

85.  The proposed class can be identified and located using the Defendants' payroll and personnel records. Class members may be informed of the pendency of this action by direct mail, telephone communication, electronic mail, and/or published and broadcast notice.

**Common Questions of Fact or Law**

86.  There are questions of fact and law common to each class member which predominate over any questions affecting only individual members.

87.  With respect to considerations of consistency, economy, efficiency, fairness, and equity, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**Typicality**

88.  Plaintiffs' claims are typical of the claims of the class members. As a result of Defendants' unlawful conduct, Plaintiffs suffered similar injuries as those suffered by other members of the respective class they seek to represent.

**Adequacy**

89.  Plaintiffs are adequate representatives of the class they seek to represent because they are members of such class and their interests do not conflict with the interests of the members of the class they seek to represent. The interests of the class members will be fairly and adequately protected by Plaintiffs and their undersigned counsel. Plaintiffs have hired competent attorneys who are experienced in class action litigation of this type and who are committed to the prosecution of this Action.

12

**Superiority**

90.     A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually.

91.     Moreover, as the damages suffered by each class member may be relatively small, the expenses and burden of individual litigation would make it difficult for Plaintiffs to bring individual claims.

92.     The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201 *ET SEQ.***
**FAILURE TO COMPENSATE FOR OVERTIME**

93.     Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

94.     The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or are employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 207(a)(1).

95.     Defendants were and are subject to the overtime pay requirements of the FLSA because Defendant Quik Fund is an enterprise engaged in commerce or in the production of goods for commerce.

96.     Plaintiffs and the FLSA Class are also individuals engaged in commerce because they regularly dealt with prospective borrowers who lived outside the state of New York through telephone calls and email transmissions.

97.     Upon information and belief, the gross annual volume of sales made or business done by Defendant Quik Fund for the years 2017, 2018, and 2019 was not less than $500,000.00.

98.     At all times relevant to this action, Plaintiffs and the FLSA Class were entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. § 207, *et seq*.

99.     Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week.

100.    By the above-alleged conduct, Defendants have violated the FLSA by failing to pay Plaintiffs and the FLSA Class overtime compensation as required by the FLSA.

101.    Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA.

102.    However, none of the Section 13 exemptions apply to Plaintiffs or the FLSA Class because they did not meet the requirements for coverage under the exemptions during the relevant periods of their employment.

103.    Defendants acted willfully and either knew that their conduct violated the FLSA or showed a reckless disregard for the matter of whether their conduct violated the FLSA.

104.    Defendants did not act in good faith with respect to the conduct alleged herein.

105.    As a result of Defendants' violations of the FLSA, Plaintiffs and the FLSA Class have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees, and costs of litigation, pursuant to 29 U.S.C. § 216(b).

**COUNT II**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201 *ET SEQ.***
**FAILURE TO PAY MINIMUM WAGES**

106.    Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

107.    As set forth herein, Defendants routinely and regularly failed to pay Plaintiffs and the FLSA Class the applicable minimum wage, in violation of 29 U.S.C. §206(a).

108.    Defendants have acted willfully and have either known that their conduct violated the FLSA or have shown reckless disregard for the matter of whether their conduct violated the FLSA.

109.    Defendants have not acted in good faith with respect to the conduct alleged herein.

110.    As a result of Defendants' violations of the FLSA, Plaintiffs and the FLSA Class have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees, and costs of litigation, pursuant to 29 U.S.C. § 216(b).

**COUNT III**
**VIOLATION OF THE NEW YORK LABOR LAW**
**ARTICLE 6 AND 19**
**FAILURE TO COMPENSATE FOR OVERTIME**

111.    Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

112.    At all times relevant to this Action, Plaintiffs and the New York Class were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

113.    Under New York law, an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week in the manner and methods provided by the FLSA. 12 N.Y.C.R.R. §§ 142-2.2.

114.    By the above-alleged conduct, Defendants failed to pay Plaintiffs and the New York Class overtime compensation as required by the New York Labor Law and the Regulations pertaining thereto.

115.    By the above-alleged conduct, Defendants failed to pay Plaintiffs and the New York Class overtime compensation for the time periods in which they worked in excess of forty (40) hours a week for Defendants.

116.    Plaintiffs and the New York Class were not exempt from the overtime provisions of the New York Labor Law during the relevant periods of their employment, because they did not meet the requirements for any of the reduced number of exemptions available under New York law.

117.    Defendants acted willfully and either knew that their conduct violated the New York Labor Law or showed a reckless disregard for the matter of whether their conduct violated the New York Labor Law.

118.    Defendants did not act in good faith with respect to the conduct alleged herein.

119.    As a result of Defendants' violations of the NYLL, Plaintiffs and the New York Class incurred harm and loss in an amount to be determined at trial, in addition to liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

**COUNT IV**
**VIOLATION OF THE NEW YORK LABOR LAW**
**ARTICLE 19**
**FAILURE TO PAY MINIMUM WAGES**

120.     Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

121.     At all times relevant to this Action, Plaintiffs and the New York Class were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

122.     Defendants willfully failed to pay Plaintiffs and the New York Class at the applicable minimum hourly wage, in violation of the New York Minimum Wage Act, specifically New York Labor Law § 652.

123.     As a result of Defendants' unlawful practices, Plaintiffs and the New York Class have suffered a loss of wages.

124.     As a result of Defendants' violations of the NYLL, Plaintiffs and the New York Class have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, interest, and attorneys' fees and costs of litigation.

**COUNT V**
**VIOLATION OF THE NEW YORK LABOR LAW**
**NYLL SECTION 195(1)**
**FAILURE TO PROVIDE WAGE NOTICES**

125.     Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

126.     Defendants willfully failed to furnish Plaintiffs and the New York Class with wage notices during their employment, including the date of their hiring, as required by NYLL § 195(1), in English or in the language identified by the employee as his/her primary language, which were to contain, among other things, the employee's rate or rates of pay and basis thereof; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer;

17

any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and the employee's regular hourly rates of pay and overtime rates of pay.

127.     Through their knowing and intentional failure to provide Plaintiffs and the New York Class with the wage notices required by the NYLL, Defendants have willfully violated NYLL §§ 190 *et seq*. and the supporting Regulations.

128.     Due to Defendants' willful violations of the NYLL, Plaintiffs and the New York Class are entitled to recover statutory penalties, together with costs and attorneys' fees provided by NYLL § 198(1-b).

**COUNT VI**
**VIOLATION OF THE NEW YORK LABOR LAW**
**NYLL SECTION 195(3)**
**FAILURE TO PROVIDE WAGE STATEMENTS**

129.     Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

130.     Defendants willfully failed to provide Plaintiffs and the New York Class with complete, accurate, and written wage statements with their wages each week as required by NYLL § 195(3), which were to include, among other things, the dates of work covered by each payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; deductions; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular hours worked and the number of overtime hours worked.

131.     Through their knowing and intentional failure to provide Plaintiffs and the New York Class with wage statements required by the NYLL, Defendants have willfully violated NYLL §§ 190 *et seq*. and the supporting Regulations.

132.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the New York Class are entitled to recover statutory penalties, together with costs and attorneys' fees as provided by NYLL § 198(1-d).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, by and through their attorneys, Neil H. Greenberg & Associates, P.C., demand judgment against Defendants and in favor of Plaintiffs and all similarly situated mortgage loan originators for a sum that will properly, adequately, and completely compensate Plaintiffs and all similarly situated mortgage loan originators for the nature, extent, and duration of the damages, costs of this action, and as follows:

A.    Declare and find that Defendants committed one or more of the following acts:

    1.    Willfully violated provisions of the FLSA by failing to pay Plaintiffs and all similarly situated mortgage loan originators overtime compensation and minimum wages;

    2.    Willfully violated the provisions of the NYLL by failing to pay Plaintiffs and all similarly situated mortgage loan originators overtime compensation and minimum wages;

    3.    Willfully violated the provisions of the NYLL by failing to provide Plaintiffs and all similarly situated mortgage loan originators with wage notices and wage statements;

B.    Award compensatory damages, including all overtime compensation and minimum wages owed, in an amount according to proof;

C.    Award liquidated damages under the NYLL, or alternatively the FLSA;

D.    Award statutory damages under the NYLL;

E.    Award interest on all NYLL overtime compensation and minimum wages due accruing from the date such amounts were due;

F.      Award all costs and attorneys' fees incurred in prosecuting this action; and

G.      Provide such further relief as the Court deems just and equitable.

Dated: Massapequa, New York
       August 12, 2020

_____
Neil H. Greenberg, Esq.
Keith E. Williams, Esq.
Neil H. Greenberg & Associates, P.C.
*Attorneys for the Plaintiffs*
4242 Merrick Road
Massapequa, New York 11758
Tel: 516.228.5100
nhglaw@nhglaw.com
keith@nhglaw.com

**FAIR LABOR STANDARDS ACT CONSENT FORM**

I, the undersigned, consent to be a party in a FLSA action against **Quik Fund, Inc.** and related individuals and entities in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. section 216(b).

Dated: Elmont, New York
     August  _11_ , 2020

_____
Richard Rosenberg

- 1 -

## FAIR LABOR STANDARDS ACT CONSENT FORM

I, the undersigned, consent to be a party in **<u>Rosenberg, et al. v. Quik Fund, Inc.</u>** in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. section 216(b).

Dated: Island Park, New York
5/19/2020

_____

DocuSigned by:

*Paul D'Ascoli*
3201D440E2114E8...

Paul D'Ascoli